Michael F. Lynch
Nevada State Bar No. 8555
Lynch Law Practice, PLLC
3613 S. Eastern Ave.
Las Vegas, Nevada 89169
Telephone: (702) 684-6000
Fax: (702) 543-3279
Michael@LynchLawPractice.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| Tonkawa Tribe of Indians of Oklahoma d/b/a Tonkawa Enterprises; Cow Creek Band of Umpqua Tribe of Indians; and Umpqua Indian Development Corporation<br><br>on behalf of themselves and others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>Scientific Games Corporation, Bally Technologies, Inc., and Bally Gaming, Inc.,<br><br>     Defendants. | Case No. 2:20-cv-01637-JCM-BNW<br><br>**SECOND AMENDED COMPLAINT**<br><br>JURY DEMAND |

   Plaintiffs on behalf of themselves and similarly situated United States regulated casinos have been harmed in their business or property by virtue of Defendants' monopolization of a United States relevant market for the sale of automatic card shuffling machines for regulated casinos ("card shuffling relevant market") and attendant monopoly overcharging by Defendants.

**NATURE OF ACTION**

   1.  This matter is closely related to an action brought against Defendants by their competitors. *Shuffle Tech International LLC et al. v Scientific Games Corp. et al.,* No. 1:15-cv-3702 (N.D. Ill.) ("*Shuffle Tech Litigation*"). On August 8, 2018 the Court entered judgment on a

jury verdict against Defendants for $315 million in total to compensate them for their lost profits materially caused by Defendants' monopolization of the card shuffling relevant market. Ex. B.

2.      At trial the Defendants' competitors established that they invented and attempted to bring to market an innovative card shuffling machine and were prevented from doing so by the Defendants, which filed multiple sham litigations in an attempt to enforce invalid patents obtained by committing a fraud on the U.S. Patent and Trademark Office ("PTO"). The competitors established that, as a consequence, Defendants have unlawfully monopolized the card shuffling relevant market and forced them out of the market.

3.      Pursuant to the Court's jury instructions the jury is presumed to have made the following findings: (a) "automatic card shuffling machines for regulated casinos in the United States is a relevant market"; (b) "the [D]efendants had monopoly power in that market"; (c) "the [D]efendants willfully acquired or maintained monopoly power by anticompetitive conduct"; (d) "the [D]efendants' anticompetitive conduct occurred in or affected interstate commerce"; and (e) "the [D]efendants' anticompetitive conduct harmed consumers." Ex. A.

4.      Defendants are precluded from relitigating these issues here, and as a consequence, they are also precluded from relitigating the jury's ultimate finding that they have violated the antitrust laws by monopolizing the card shuffling relevant market and harming competition as of August 8, 2018, the date judgment was entered in the *Shuffle-Tech Litigation*.

## PARTIES

5.      Plaintiff Tonkawa Tribe of Indians of Oklahoma resides in Kay County in Northern Oklahoma. It is headquartered on the west bank of the Chickaskia River about 2.5 miles southeast of the town of Tonkawa, Oklahoma. Through Tonkawa Enterprises the Tribe operates the Native Lights Casino and the Tonkawa Hotel and Casino. It has leased or purchased several automatic card shuffling machines directly from Defendants from September 2016 to the present.

6. Plaintiff Cow Creek Band of Umpqua Tribe of Indians ("Tribe") is a federally-recognized tribal government located in Roseburg, Oregon. Through the Umpqua Development Corporation, the Tribe operates the Seven Feathers Casino Resort. The Seven Feathers Casino Resort is a top Tribal Governmental Gaming facility. The Seven Feathers Casino Resort has leased or purchased several automatic card shuffling machines directly from Defendants from September 2016 to the present.

7. Plaintiff Umpqua Indian Development Corporation is a Section 17 corporation of the Plaintiff Cow Creek Band of Umpqua Tribe of Indians.

8. Defendant Scientific Games Corporation ("SGC") is a Delaware corporation with a corporate office in Las Vegas, Nevada.

9. Defendant Bally Technologies, Inc. is, or was, on information and belief, a Nevada corporation with offices located in Las Vegas, Nevada. On November 21, 2014, Bally was acquired by, and its operations taken over by, SGC.

10. Defendant Bally Gaming, Inc. ("BGI") is or was a Nevada corporation with offices located in Las Vegas, Nevada. BGI is or was a subsidiary of Bally Gaming International, Inc.

## JURISDICTION AND VENUE

11. This action arises under the antitrust and patent laws of the United States, particularly Section 2 of the Sherman Act, 15 U.S.C. § 2; Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26; the United States Patent Code, 35 U.S.C. §§ 102, 103, 114, 283, and 285; and § 1.56 of Title 37 of the Code of Federal Regulations ("CFR").

12. This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 4, 15, 26, and 1121 and 28 U.S.C. §§ 1331, 1337, and 1338.

13. This Court has personal jurisdiction over Defendants in this state and district under 15 U.S.C. § 22; 28 U.S.C. §§ 1391(b) and (c) since the Defendants regularly conduct business in this

state and district, "reside" in this jurisdiction, engaged in anticompetitive conduct in this jurisdiction; and the impact of the violations alleged has been the lessening of competition in the card shuffling relevant market in part in this district.

14.     Defendants have a regular and established business in this district, are found in this district, have agents in this district and have well more than "minimum contacts."

15.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (2), (c)(2), and (d); and 15 U.S.C. §§ 15 and 26, because, *inter alia*, the Defendants are subject to personal jurisdiction in this state and district, and therefore reside in this state and district, and a substantial part of the events giving rise to the claims asserted herein arose in this state and district, as further detailed in the following paragraphs.

## EXCLUSIONARY CONDUCT

16.     Should this Court determine in some respect that issue preclusion does not pertain to establish Defendants' monopolization violation, Plaintiffs would show the Court as follows:

17.     In 1983, John Breeding started SHFL Entertainment, Inc. ("SHFL"), a company to manufacture automatic playing card shufflers for use in casinos. By 2012, SHFL had released multiple different models of automatic card shufflers and obtained approximately 253 patents related to shuffler technology. In 2013 Bally Technologies acquired SHFL, and in 2015 Defendant SGC acquired Bally Technologies. Defendant Bally Gaming is a subsidiary of Bally Technologies and operates under the Scientific Games brand. It is responsible for manufacturing equipment and games for casinos in the United States. Collectively herein Defendants are referred to as "SHFL."

18.     Defendants have misused two of SHFL's patents: the '982 patent and the '935 patent. In April 2002 SHFL filed the application for the '982 patent based on a new model of an automatic shuffler known as the Deckmate 1. According to SHFL, the Deckmate 1 is an advance over other automatic shufflers based on the technology it uses to receive cards and return them to the dealer.

The Deckmate 1 is installed under the gaming table, with its upper surface flush with the surface of the table. It also uses an elevator to move the cards from beneath the table where they are randomized to the top of the table for use. The elevator has a cover that moves automatically to return the cards to the dealer. During the prosecution, SHFL disclosed many other patents as prior art. The PTO issued the '982 patent in November 2003.

19.   In October 2003 SHFL filed an application for what eventually became the '935 patent, also based on the Deckmate 1.

20.   In October 2012 DigiDeal Corporation ("DigiDeal") displayed the DigiShuffle prototype at a gaming show in Nevada, which SHFL employees attended. These employees saw the prototype and SHFL then filed suit against DigiDeal in the District of Nevada, alleging that the DigiShuffle infringed the '982 and '935 patents.

21.   In January 2014 DigiDeal initiated re-examination proceedings before the PTO on claims 1–3 and 42–46 of the '982 patent, and claims 1, 2, 9–11, and 14 of the '935 patent. In August 2014, the PTO rejected claims 1–3 and 42–46 of the '982 patent based on the Block '044 patent, *infra* ¶ 39, and the Roblejo '122 patent, *infra* ¶¶ 37-38**.** SHFL then amended its claims to state that the shuffler must be mounted flush with a recessed support surface beneath the table cover and a cover set flush into the shuffler's top surface over the elevator, features not taught by the Block patent. The PTO agreed that the Block patent taught away from SHFL's invention as described in the amended claims, because the Block device prevents anyone from physically touching the cards and does not teach a shuffler that has a top surface mounted flush with the gaming table surface. On May 2015, the PTO confirmed that the claims in the '982 patent were patentable, and it issued a reexamination certificate in July 2015.

22.   During the '935 reexamination the PTO also rejected some of the claims in the '935 patent after determining that they were obvious based on the Block '044 patent and combinations

of the Roblejo '122 patent with other patents. The PTO indicated that the material in the '935 patent was obvious in light of the disclosure in the Roblejo '122 patent of an automatic shuffler and another reference that described a mah-jongg block shuffler mounted to a gaming table and recessed beneath its surface. The PTO also indicated that the Block patent teaches an automatic shuffler mounted to a gaming table and therefore that it "teaches the limitations deemed to be missing from the prior art during the original prosecution of the '935 patent." SHFL then cancelled all of the reexamined claims from the '935 patent "in order to expedite the issuance of a reexamination certificate."

23.     In April 2015 the *Shuffle Tech* Plaintiffs filed suit against Defendants SHFL. In an amended complaint plaintiffs alleged that SHFL had violated Section 2 of the Sherman Act by procuring two patents using fraud on the PTO and then engaging in sham litigation asserting baseless claims against its competitors.

24.     In June 2015 SHFL filed a notice of concurrent proceedings with the PTO in which it attached a copy of the *Shuffle Tech* complaint. The notification indicated that SHFL had determined it had no obligation to submit the references mentioned in plaintiffs' complaint because it had already determined that they were either cumulative, already made of record, or not a patent or publication. In July and August 2015, the PTO issued reexamination certificates for the '982 and '935 patents.

### SHFL Infringement Litigation

25.     **CARD Litigation.** In 2002 Casino Austria Research and Development in Vienna ("CARD") began importing into the United States an automatic shuffler known as the "one2six." In May 2003 CARD filed suit in federal court in Nevada against SHFL requesting a declaratory judgment that its shuffler did not infringe two of SHFL's patents, neither of which is at issue in this case. SHFL filed a counterclaim alleging infringement of those patents as well as one other. During

the litigation CARD argued that SHFL's patents were invalid because they were anticipated by the Nicoletti shuffler, the Luciano prototype, and the Roblejo prototype. Atilla Grauzer, an engineer at SHFL, submitted a declaration in that case on behalf of SHFL in which he disputed this contention as to each reference. Both Grauzer and Mark Litman, SHFL's outside patent prosecution counsel, attended the deposition of CARD's technical expert, Joel Greenberg, who opined that the Luciano and Roblejo prototypes anticipated SHFL's patents. Toward the end of the litigation, either SHFL or its counsel at the time created what the parties here refer to as the shuffler art discs, which contained documents from the CARD litigation and technical information on the pieces of allegedly invalidating prior art.

26.     In June 2004 SHFL and CARD voluntarily dismissed the Nevada case following a settlement agreement in which SHFL acquired CARD. Litman and Jennifer Farrar, SHFL's in-house intellectual property counsel, then filed copies of the shuffler art discs in multiple pending patent applications before the PTO. SHFL did not file a copy of the disc as part of the then-pending '935 application. It did represent in amendments filed with a different patent application related to shuffler technology that both in-house and outside prosecution counsel for SHFL were "in the time-consuming process of reviewing documents . . . that are the result of litigation between [SHFL] and third parties."

27.     **DigiDeal Suit in D. Nevada.** In October 2012 DigiDeal displayed the DigiShuffle prototype at a gaming show in Nevada, which SHFL employees attended. These employees saw the prototype and SHFL then filed suit against DigiDeal in the District of Nevada, alleging that the DigiShuffle infringed the '982 and '935 patents.

28.     In January 2014 DigiDeal initiated re-examination proceedings before the PTO on claims 1–3 and 42–46 of the '982 patent, and claims 1, 2, 9–11, and 14 of the '935 patent. Alan Fanucci acted as lead counsel for SHFL in the reexamination proceedings and received assistance

from Howard Shin and Kimball Anderson. In August 2014, the PTO rejected claims 1–3 and 42–46 of the '982 patent based on the Block '044 patent and the Roblejo '122 patent. SHFL then amended its claims to state that the shuffler must be mounted flush with a recessed support surface beneath the table cover and a cover set flush into the shuffler's top surface over the elevator, features not taught by the Block patent.

29.     The PTO agreed that the Block patent taught away from SHFL's invention as described in the amended claims, because the Block device prevents anyone from physically touching the cards and does not teach a shuffler that has a top surface mounted flush with the gaming table surface. On May 2015, the PTO confirmed that the claims in the '982 patent were patentable, and it issued a reexamination certificate in July 2015.

30.     During the '935 reexamination, the PTO also rejected some of the claims in the '935 patent after determining that they were obviously based on the Block '044 patent and combinations of the Roblejo '122 patent with other patents. The PTO indicated that the material in the '935 patent was obvious in light of the disclosure in the Roblejo '122 patent of an automatic shuffler and another reference that described a mah-jongg block shuffler mounted to a gaming table and recessed beneath its surface. The PTO also indicated that the Block patent teaches an automatic shuffler mounted to a gaming table and therefore that it "teaches the limitations deemed to be missing from the prior art during the original prosecution of the '935 patent." SHFL then cancelled all of the reexamined claims from the '935 patent "in order to expedite the issuance of a reexamination certificate." PTO issued reexamination certificates for the '982 and '935 patents.

31.     In September 2016, SFHL appealed a grant of summary judgment in favor of DigiDeal. *SHFL Ent., Inc. v. Digideal Corp.*, No. 2:12-cv-1782, Dkt. 170 (D. Nev. Sept. 23, 2016).  SFHL went on to prosecute that appeal, filing its brief on November 28, 2016. The appeal related to SHFL's attempt to enforce the '935 and the '982 patents.

32.  **DigiDeal Reorganization in E.D. Wash.**  SHFL made a new sham filing in 2018. DigiDeal had entered into bankruptcy seeking Chapter 11 reorganization to keep operating.  *In re Digideal Corp.*, No. 17-bk-00449 (E.D. Wash Bankr.). After the competitor was 16 months into reorganization, and just two months before the judgment of monopolization was entered against SHFL in *SHFL*, SFHL on June 13, 2018 filed a motion to file a proof of claim after the claim bar date. Dkt. No. 423. The proof of claim (attached as an exhibit to the declaration in support of SFHL's motion) is based on the 2013 complaint from the DigiDeal matter, which asserted the '935 and the '982 patents as a basis of an infringement claim even though Judge Navarro had entered summary judgment nearly two years before on this sham claim, which the Federal Circuit had left undisturbed.

33.  Thus in a new federal court Defendants sought to misappropriate a competitor's assets using the fraudulent patents.

### Prior Art Known to SHFL

34.  With fraudulent intent SHFL failed to disclose relevant pieces of prior art described below during the prosecutions and reexaminations of the '982 and '935 patents.

35.  **Nicoletti Shuffler.** In September 1990 a New Jersey newspaper named The Courier-Post published an article about Adolph Nicoletti and an automatic shuffler he had invented. The article described the shuffler as "installed under a blackjack table" and included an image of the installed machine. *Id.* It also stated that Nicoletti had conducted a test run of his machine by installing it in a casino in Atlantic City. The test run ended after one week due to malfunctions. Breeding testified that he knew of a shuffler in Atlantic City that was "so big it was built under the table and cards would go down inside," but he never saw it and does not know who manufactured it. Breeding stated that the patent holder for the machine called him with an offer to sell the technology but that he turned it down.

36.     **Luciano Prototype.** Around July 1992 Lawrence Luciano developed a prototype of an automatic shuffler for his company, Luciano Packaging, Inc., as a result of a development agreement with International Game Technology, Inc. ("IGT"). In November 1993, IGT cancelled the development agreement. Luciano then began marketing his prototype shuffler (the Luciano prototype) to casinos and other potential customers. He made a promotional video that showed the prototype in operation, which he provided to anyone in the industry who expressed interest.

37.     **Roblejo Prototype.** In October 1997 SHFL participated in the World Gaming Expo in Nevada. Various SHFL executives and employees attended the expo, including Grauzer and Farrar, who were sent there to monitor competitive activity. At the expo another company named Casino Concepts displayed a prototype of an automatic shuffler invented by Dr. Conrad Roblejo called the Sure-Shuffler ("Roblejo prototype"). During the expo Halvard Solberg, who was hired by Casino Concepts to provide technical support at the expo, gave a very detailed demonstration of the Roblejo prototype to individuals he later learned were representatives of SHFL. The demonstration required Solberg to open the top cover and eventually remove side panels in order to answer specific technical questions. An executive at Casino Concepts later wrote a memo to Dr. Roblejo, in which he stated that "during the entire show people from [SHFL] looked at our equipment." He stated that Casino Concepts representatives spoke with SHFL's original designer, vice president of finance, and other unidentified employees.

38.     Farrar says that she visited a Casino Concepts booth at an expo in the early years of her career at SHFL but does not recall if it was in 1997. She observed a machine on the table but did not know what it was or how it operated, as there was no one manning the booth at the time. SHFL's file on the expo contains a copy of a brochure of the Roblejo prototype displayed at the 1997 expo. Grauzer testified that he has never seen the Roblejo prototype at all, much less the interior of the machine. Grauzer's files contain a report on the 1997 expo, which discusses the

Roblejo prototype and includes a marketing brochure. Grauzer maintains that he did not write this report and could not possibly have done so because it contains non-technical information as well as bullet points, which he does not know how to create. Donald Barnett, a former SHFL employee, testified during a deposition that Grauzer would have been the person SHFL relied upon to analyze competition at trade shows. Barnett stated that Grauzer is the only individual who would have written a report analyzing competition seen at a trade show. Another former SHFL employee, Robert Pietrosanto, agrees that Grauzer would have been the only individual working for SHFL at the time who was qualified to analyze a competitive product.

39.    **Block Patent.** The Block '044 patent, issued by the PTO in March 2002, discloses an automatic card shuffling and dealing system that includes a shuffling device under the gaming table and an elevator that delivers the shuffled cards to the table surface. SHFL disclosed this patent in the specifications of four patent applications it submitted in July 2003 as well as during the course of the prosecution of the '935 patent. The company did not disclose the Block '044 patent in the application for the '982 patent.

### Defendants' Failures to Disclose Prior Art Before the PTO

40.    Defendants' omissions, selective disclosure, and misrepresentations relating to prior art support a finding of intent to defraud the PTO in the prosecution of the '982 and '935 patents and in the reexamination of these patents.

### '982 Patent

41.    SHFL acted with fraudulent intent by failing to disclose the Block '044 patent during prosecution of the '982 patent. Those involved in the prosecution of the '982 patent were generally aware of the Block '044 patent because SHF disclosed this reference in four other patent specifications filed during the same time period.

42.   Further, SHFL was aware of the materiality of the Block '044 patent to the '982 prosecution. Two of the four patent applications in which SHFL cited the Block '044 patent were continuations-in-part of the application ("CIP") for the '982 patent which supports an inference that the Block patent was also relevant to the '982 patent. Further, SHFL stated in the specification of its '099 patent -- a patent that was not a CIP of the '982 patent but dealt with automatic shuffling technology -- that the Block '044 patent "describes a top of a card table with a card-dispensing hole there through and an arcuate edge is covered by a transparent dome shaped cover." And during prosecution of the '982 patent, the PTO initially rejected a number of the claims based on other pieces of prior art that also taught the use of a cover over an elevator.

43.   In response, SHFL distinguished its invention by stating that it alone disclosed an automatically moveable cover. Thus SHFL was aware both that the Block '044 patent disclosed a cover and that the cover was a key feature of the '982 patent.

44.   Although SHFL's citation to Block in the '099 patent did not expressly mention an automatically moveable cover, Block clearly discloses this feature. Further, the description of the preferred embodiment of the Block '044 patent states that it has a motor that "is operable to cause the cover to cover and uncover the card dispensing hole in response to a signal from a computer." And during reexamination of the '982 patent, the PTO found that the Block '044 patent did in fact disclose an automatically moveable cover. Thus there is a nexus between the disclosures of the Block '044 patent and the (claimed) point of novelty of the '982 patent. SHFL knew that the Block '044 patent disclosed an automatically moveable cover, a key feature of the '982 patent, and yet failed to disclose this reference to the PTO to deceive the PTO.

### '935 Patent

45.   SHFL also fraudulently omitted the Nicoletti, Luciano, and Roblejo references during the prosecution of the '935 patent, which lasted from October 2003 until April 2009. SHFL

was aware of all three of these prior art references and their materiality prior to October 2003. In 2003 SHFL sued CARD for infringement of three of its shuffler technology patents. In response, CARD argued that the patents were invalid as anticipated by the Nicoletti Shuffler, the Roblejo prototype, and the Luciano prototype. SHFL was aware that these references were relevant to its shuffler technology. Grauzer was also aware of the Luciano and Roblejo prototypes because he submitted an expert declaration in which he explained how these references do not anticipate SHFL's patents. Further, near the end of the suit, SHFL prepared multiple discs containing all the documents from the CARD litigation discussing these references as well as information regarding their operation and that Farrar and Litman discussed these disks. Although SHFL submitted copies of the discs to the PTO in connection with a number of then-pending patent applications, it did not submit the disc in connection with the '935 prosecution.

46.     SHFL's selective disclosure of the discs indicates deceptive intent. The '935 patent does in fact cover the compartment shuffling method. SHFL chose not to disclose these references in the '935 prosecution despite the fact that the device in the '935 patent possessed the same features as other devices in which SHFL disclosed the discs.

47.     Further, SHFL knowingly misrepresented the state of the prior art to the PTO during prosecution. SHFL made a number of statements during prosecution regarding the novelty of the device in the '935 patent that were directly contradicted by the references that SHFL had in its possession as a result of the CARD litigation. This lack of candor supports an inference of fraudulent intent. SHFL intended to defraud the PTO by omitting these references from the prosecution.

**Reexamination of the '982 and '935 Patents**

48.     SHFL engaged in fraud on the PTO during reexamination of both the '982 patent and the '935 patent by failing to disclose the Nicoletti, Roblejo, and Luciano references.

Reexamination of both patents began in January 2014, almost ten years after the CARD litigation and SHFL's creation of the discs containing the prior art. Thus SHFL was aware of the references prior to reexamination.

49.     SHFL acted with fraudulent intent in omitting the references. In an effort to distinguish its inventions as patentable, SHFL made a number of statements during prosecution that are directly contradicted by the omitted references. SHFL omitted these references with the intent to defraud the PTO into granting an otherwise invalid patent.

**SHFL Sham Litigation**

50.     Prior to its suit against DigiDeal, SHFL filed sham patent infringement litigation lawsuits against every other competitor in the card shuffling relevant market, then acquired their assets at a discount after they had been weakened by the litigation, or drove them out of the market with the threat of litigation expenses which small start-up operations could not afford. These litigations include: (a) an action against CARD LLC in 2003-2004 followed by an acquisition of CARD by SHFL in 2004; (b) a suit against VendingData in 2004-2009, followed by VendingData's acquisition by SHFL in 2009; (c) a suit against Taiwan Fulgent it 2009-2010; and (d) a suit against TCS Huxley in 2012-2013, similarly resulting in TCS's departure from the market.

**ISSUE PRECLUSION**

51.     The jury in the *Shuffle Tech Litigation* was instructed that it should find that Defendants had engaged in unlawful monopolization if it made the following findings: (a) "automatic card shuffling machines for regulated casinos in the United States is a relevant market"; (b) "the [D]efendants had monopoly power in that market"; (c) "the [D]efendants willfully acquired or maintained monopoly power by anticompetitive conduct"; (d) "the [D]efendants' anticompetitive conduct occurred in or affected interstate commerce"; and (e) "the [D]efendants' anticompetitive conduct harmed consumers." Ex. A at 14-23 (jury instructions); Ex. B (judgment).

Under the law of this Circuit,Defendants ineffectively sought to vacate the judgment by agreement with the competitor plaintiffs while the matter was on appeal.

52.     These findings were essential to the jury's verdict and the judgment entered on this verdict. These issues were actually litigated and Defendants were fully and fairly represented.

53.     Therefore they are precluded from relitigating these findings and as a consequence are precluded from relitigating that that they have violated the antitrust laws by monopolizing the United States card shuffling relevant market as of August 8, 2018, the date judgment was entered in the *Shuffle-Tech Litigation*.

54.     As a consequence direct purchasers of Defendants' card shuffling machines in the proposed Class need only show this Court that they have been materially injured by Defendants' monopolization in their business or property by paying monopoly pricing on purchases directly from Defendants (or otherwise), and the amount of their actual damages.

## RELEVANT MARKET

55.     Casinos routinely use automatic card shuffling machines on gaming tables to automate the historically labor-intensive process of shuffling physical playing cards between each hand of play. The relevant product market is the market for the sale or lease of these card shufflers certified and approved for use by casinos, excluding card shufflers designed for private consumer use in unregulated environments and also excluding card shufflers that randomize virtual "cards" in video-based games. The relevant geographic market is the United States.

## MARKET POWER

56.     Defendants have been very successful in their efforts to monopolize the card shuffling relevant market. They now control virtually 100% of the relevant market. They also dominate the global market as well, with slightly less than 100% market share worldwide.

57.     In addition to forcing all actual competitors out of the market, SHFL's, and now SGC's, lengthy pattern of predatory, vexatious patent litigation has effectively raised a substantial artificial barrier to entry for all potential competitors as well as excluded competitors. As a result no potential competitor can enter the relevant market without a multi-million dollar war chest and a business plan that includes millions in upfront litigation costs as part of its anticipated start-up expense.

### TOLLING

58.     Because of Defendants' fraudulent patent concealment before the United States PTO beginning in April 2009, and the concealed, sham nature of their litigations (relying on the fraudulent patents) to force multiple competitors from the relevant market, casino Plaintiffs here, as purchasers in the relevant market from the Defendants, were unaware they were suffering actionable, long-term antitrust price injury due to monopolization until  June 26, 2020 in the case of the *Tonkawa* Plaintiff, and September 17, 2020 in the case of the *Cow Pen* Plaintiffs, when the record and judgment in *SHFL* was brought to their attention by antitrust counsel Berry Law PLLC.

59.     Prior to these times the long-term actionable antitrust price injury and denial of consumer choice suffered by them were unknown to them, and their long-term tribal counsel who represent them here.

60.     Upon the notice from antitrust counsel, the tribal counsel diligently and immediately conducted investigations, apprised their tribal Boards, retained antitrust counsel, and brought these matters.

61.     The Plaintiff casino purchasers acting as reasonable buyers did not have actual nor constructive knowledge of the facts giving rise to their antitrust injury and claims before 2020. Upon notice by antitrust counsel the casinos exercised due and immediate diligence to uncover the

facts alleged here. Only then did they determine that their long-term antitrust injury from the monopolization had become ascertainable.

62.     Thus the earliest the statute of limitation began to run in this matter is June 26, 2020, the date of antitrust notice to the *Tonkawa* Plaintiff.

## ANTITRUST INJURY IN FACT

63.     As of August 18, 2018 the *Shuffle Tech* judgment establishes in part that the Defendants had monopolized the relevant market for automatic card shuffling machines for regulated casinos in the United States, possessed monopoly power in that market, and their anticompetitive conduct imposed antitrust injury on casino consumers of these machines such as Plaintiffs and other members of the purported Class. Throughout the damage period in the instant matter, beginning in April 1, 2009, Defendants have harmed competition and inflicted antitrust injury on members of the proposed Class by charging them unlawful purchase and lease pricing well above competitive levels, as well as denying them competitive choice as to the use of automatic card shuffling machines.

## CLASS ACTION ALLEGATIONS

### Fed. R. Civ. Proc. 23(b)(3)

### Card Shuffler Damage Class

64.     Plaintiffs bring this action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages on behalf of the following class ("Card Shuffler Damage Class").

Plaintiffs represent a Class of all regulated United States casinos directly leasing or purchasing card shufflers from the Defendants on or after April 1, 2009. Excluded from the class are casinos operated or controlled by Defendants.

### Rule 23(a) Prerequisites

65.     Prosecution of the claims of the Class as a class action is appropriate because the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met:

(a)     The number of persons in the Class is in the hundreds, and the members of the Class are therefore so numerous that joinder of all members of the Class is impracticable. Joinder also is impracticable because of the geographic diversity of the members of the Class, the need to expedite judicial relief, and the Class Representatives' lack of knowledge of the identity and addresses of all members of the Class.

(b)     There are numerous questions of law and fact arising from the pattern of Defendants' monopolization which are common to the members of the Class. These include, but are not limited to, common issues as to (1) whether the Defendants have engaged in monopolization and are estopped from defending otherwise; and (2) whether this conduct, taken as a whole, has materially caused antitrust price injury to be inflicted directly on members of the proposed Class and denied them freedom of product choice.

(c)     The claims of the Class Representatives are typical of the claims of the members of the Class and fairly encompass the claims of the members of the Class. The Class Representatives and the members of the Class are similarly or identically harmed by the same systematic and pervasive conduct.

(d)     The Class Representatives and the Representatives' counsel will fairly and adequately protect the interests of the members of the Class. There are no material conflicts between the claims of the Class Representatives and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of the Class Representatives and the other members of the Class.

**Rule 23(b)(3) Prerequisites**

66.     In addition, the prosecution of the claims of the Class as a class action pursuant to Rule 23(b)(3) is appropriate because:

(a)     Questions of law or fact common to the members of the Class predominate over

any questions affecting only its individual members; and

(b)     A class action is superior to other methods for the fair and efficient resolution of the controversy.

**Ascertainment of the Members of the Class**

67.     The members of the Class, and their payments to Defendants, can be easily ascertained through the Defendants' sales records.

**COUNT I**

68.     Plaintiffs incorporate by reference the allegations set forth above as if fully set forth herein.

69.     Defendants have monopolized the United States card shuffling relevant market in violation of Section Two of the Sherman Act, 15 U.S.C. § 2, and are precluded from relitigating such monopolization including its harm to casino members of the proposed Class.

70.     Defendants by their exclusionary conduct have obtained and maintained market power in the United States relevant market and as a consequence have harmed competition by charging above-competitive pricing, and denying competitive choice, to members of the proposed Class.

`                          **REQUESTS FOR RELIEF**

Plaintiffs respectfully request the following relief:

A.      That members of the Card Shuffler Damage Class recover damages equal to the difference between the prices they directly paid to Defendants for card shufflers and the competitive prices that would have prevailed in a relevant market but for Defendants' monopolization, trebled;

B.      That Plaintiffs be awarded the costs of suit, including reasonable attorneys' fees and expert fees; and

1    C.    That Plaintiffs be awarded pre- and post-judgment interest on all sums awarded,

2  and other relief as the Court deems necessary and justified.

3  **JURY TRIAL DEMANDED**

4    Plaintiffs demand a trial by jury of all claims alleged herein so triable.

5  Dated: October 12, 2020                    Respectfully submitted,

6                                             **Lynch Law Practice, PLLC**
                                              Michael F. Lynch
7                                             Nevada Bar No. 8555
                                              3613 S. Eastern Ave.
8                                             Las Vegas, Nevada 89169
                                              Telephone: (702) 684-6000
9                                             Fax: (702) 543-3279
                                              Michael@LynchLawPractice.com
10

11                                            **By:** */s/ R. Stephen Berry*
                                              R. Stephen Berry
12                                            **Berry Law PLLC**
                                              *(Admitted Pro Hac Vice)*
13                                            1100 Connecticut Avenue, N.W., Suite 645
                                              Washington, D.C. 20006
14                                            Telephone: (202) 296-3020
                                              Fax: (202) 296-3038
15                                            sberry@berrylawpllc.com

16                                            **Fletcher Law, PLLC**
                                              Zeke Fletcher
17                                            *(Petition Pro Hac Vice Forthcoming)*
                                              333 Albert Avenue, Suite 631
18                                            Lansing, MI 48823
                                              Telephone: (517) 755-0776
19                                            Fax: (517) 913-6008
                                              zfletcher@fletcherlawpllc.com

20

21

22

23

24

**Galanda Broadman PLLC**
Gabriel S. Galanda
Anthony S. Broadman
*(Petitions Pro Hac Vice Forthcoming)*
8603 35th Ave. NE, Suite L1
Seattle, WA 98115
Telephone: (206) 557-7509
Fax: (206) 299-7690
gabe@galandabroadman.com
anthony@galandabroadman.com

**Attorneys for Plaintiffs**