# **Exhibit A**

Michael F. Lynch
Nevada State Bar No. 8555
Lynch Law Practice, PLLC
3613 S. Eastern Ave.
Las Vegas, Nevada 89169
Telephone: (702) 684-6000
Fax: (702) 543-3279
Michael@LynchLawPractice.com

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| Tonkawa Tribe of Indians of Oklahoma d/b/a Tonkawa Enterprises; Cow Creek Band of Umpqua Tribe of Indians; and Umpqua Indian Development Corporation<br><br>on behalf of themselves and others similarly situated,<br><br>          Plaintiff,<br><br>vs.<br><br>Scientific Games Corporation, Bally Technologies, Inc., and Bally Gaming, Inc.,<br><br>          Defendants. | Case No. 2:20-cv-01637-GMN-BNW |

**PLAINTIFFS' FIRST SET OF REQUESTS FOR PRODUCTION**

Pursuant to Fed. R. Civ. P. 34, Plaintiffs request that Defendants produce all of the documents and other tangible things specified below in their possession, custody, and/or control. All documents and tangible things responsive hereto should be produced for inspection and/or copying within thirty (30) calendar days at the offices of Berry Law PLLC, or as otherwise agreed to by the parties. Defendants should thereafter seasonably supplement such responses pursuant to Fed. R. Civ. P. 26(e)(2) through the date of any trial.

## INSTRUCTIONS

1.      Unless the particular request indicates otherwise, the relevant time period to which each request refers is from January 1, 2009 to the present.

2.      The singular form shall be construed to include the plural, and vice-versa, whenever such a dual construction will serve to bring within the scope of a production category any documents or information that would otherwise not be within its scope.

3.      The past tense form shall be construed to include the present tense, and vice-versa, whenever such a dual construction will serve to bring within the scope of a production category any documents or information that would otherwise not be within its scope.

4.      Each category of documents in these requests extends to any and all documents in your possession, custody, or control. A document shall be deemed to be in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right by contract, statute, or otherwise to use, inspect, examine, or copy such document in whole or in part; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document in whole or in part; or (d) as a practical matter, have been able to use, inspect, examine, or copy such document in whole or in part. Such documents shall include, but are not limited to, documents that are in the custody of any of your attorneys, representatives, or other agents.

5.      All requests for the production of documents shall be construed to include any additional documents responsive to these requests that are discovered or produced after the date of production, and therefore require further and supplemental responses.

6.      All documents should be produced as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in the request. All  documents

should be produced in the order in which they appear in the files of the producing party, organized by source, and should contain a clear indication of where each document ends and the next begins. Documents maintained in a file folder or binder should be preceded by the file folder or binder label, if one exists, and should contain a clear indication of where the file folder or binder begins and ends. All attachments to a document should be produced with the document. A unique control number should be affixed to each page (or, to each document, where a native file is produced). Computer files (including backup files), electronic mail messages, and other documents maintained in electronic form should be produced in machine-readable electronic form.

7.     If you object to any of the categories of documents set forth below, you must fully set forth your objections in writing. If an objection is made to part of any document or category, the part should be specified. If you object to any request or part of any request, you must produce all documents to which your objection does not apply.

8.     If any document that you are requested to produce or identify herein was at one time in existence, but has been lost, discarded, or destroyed, identify in writing each document and provide the following information: (a) the date or approximate date it was lost, discarded, or destroyed; (b) the circumstances and manner in which it was lost, discarded, or destroyed; (c) the reason or reasons for disposing of the document (if discarded or destroyed); (d) the identity of all persons authorizing the document and/or having knowledge of the document; (e) the identity of the person(s) who lost, discarded, or destroyed the document; (f) the identity of any persons having knowledge of the contents thereof; and (g) a detailed summary of the nature and contents of the document, including the author(s) of the document(s), the name of the person(s) to whom the document(s) was (were) delivered or addressed, including indicated or blind copy recipients, the date of the document(s), and a description of the subject matter

thereof, including any attachment or appendices, and the number of pages.

9.    If you object to any of the documents or categories of documents set forth below because you claim they are protected by the attorney-client privilege, the work product doctrine, or any other privilege or protection, separately identify each withheld document via a privileged document list. The privileged document list must identify each document separately, specifying for each document at least the following: (I) the date; (2) the author(s)/sender(s); (3) the recipient(s), including copy recipient(s); and (4) the general subject matter of the document. The sender(s) and recipient(s) should be identified by position and entity (corporation or firm, etc.) with which they are employed or associated. If any author/sender or recipient is an attorney or foreign patent agent, he or she should be so identified. The type of privilege claimed must also be stated, together with certification that all elements of the claimed privilege have been met and not waived with respect to each document.

10.    If any documents cannot be produced in full, you are requested to produce them to the fullest extent possible, specifying clearly the reasons for your inability to produce the remainder and stating any information, knowledge, or belief you have concerning the unproduced portion.

11.    In the event that multiple copies of a document exist, produce every copy on which appear any notations or markings of any sort that do not appear on any other copy.

12.    If an English translation of any requested documents exists, produce the English translation.

13.    The specificity of any request herein shall not be construed to limit the generality or reach of any other request herein.

**DEFINITIONS**

1. "You" or "Your" shall mean the Defendants and includes, without limitation, (a) any of their divisions, departments, or other organizational or operational units; (b) all of their predecessor or successor companies or corporations; (c) present and former officers, directors, employees, consultants, agents, attorneys, or others acting or purporting to act on its behalf.

2. "Customers," "purchasers," or "buyers" refer to persons purchasing or leasing automated card shuffler machines for regulated casinos from you.

3. "Purchasing" or "sale" shall mean buying or leasing.

4. "All" means all or any, and "any" means all or any.

5. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the document request all responses that might otherwise be outside its scope.

6. "Include" or "including" denotes a portion of a larger whole and is used without limitation.

7. "Concerning" or "concerns" means relating to, referring to, consisting of, reflection, discussing, constituting, describing, analyzing, studying, evidencing, incorporating, or 'n any way pertaining to or having any logical or factual connection to any matter alleged in the Second Amended Complaint.

8. "Relating to" means in whole or in part, constituting, containing, referring to, discussing, dealing with, describing, reflecting, or pertaining to in any way whatsoever.

9. "Relevant Market" means the relevant market for sale of automated card shuffler machines as set forth in the Second Amended Complaint.

10. "Document" shall have the full meaning ascribed under the Federal Rules of Civil Procedure and shall mean, without limitation, any written, recorded, or graphic material

of any kind within your possession, custody or control, whether in paper or electronic form. The term includes, but is not limited to, all agreements; contracts; letters; telegrams; interoffice communications; facsimile transmissions; memoranda; reports; records; studies; instructions; specifications; handwritten or typewritten notes; notebooks; scrapbooks; diaries; calendars; plans; drawings; sketches; diagrams; minutes of meetings, conferences and telephone or other conversations; photocopies; charts; microfilm, microfiche, tape, disk, or diskette recordings; computer records and computer printouts. The term "document" includes electronically stored data from which information can be obtained either directly or by translation through detection devices or readers (any such document is to be produced in a reasonably legible and usable form) - including, without limitation, email stored in servers and on hard disks of personal computers, listings of computer code, netlists, and digitized topographic information concerning integrated circuits. The term "document" also includes the original document (or an identical copy thereof if the original is not available) and all copies that differ in any respect from the original as a result of any notation, symbol, number, lettering, underlining, marking or other information appearing thereon, and all attachments thereto, and also includes English translations of documents requested herein whenever such translations exist in whole or in part for a document or portion thereof.

11. "Person" means a natural person, corporation, or other business organization.

12. "Sales" or "sold" refers to all sales billed to or shipped to the United States.

## DOCUMENTS REQUESTED

**Request No. 1:** Complete electronic data underlying invoices (in a machine-readable format such as *.csv, *.txt, *.xis) for all sales billed in the United States of automatic card shuffler machines sold to regulated casinos by you, or other products you contend are in the Relevant Market. Data for each transaction should include, but are not limited to, the

following characteristics:

  A. Date of transaction, including but not limited to the date of order, date of invoice, and date of provision. Any unique numbers that identify the transactions, as well as any associated invoice number or purchase order number.

  B. Bill-to Customer and Ship-to information, including name; any identifying customer number; geographic location (address, state, country); any customer classification information; and distribution channel.

  C. Product information, including unique identifier of product; name; description; any fields containing product characteristics; and product line/family.

  D. Transaction volume or quantity (*i.e.*, units sold or returned).

  E. Transaction amount in dollars, including identification of any discount, rebate, or other adjustment to the final price of the product.

  F. Unit price in dollars

  G. Any adjustments to sale amounts and prices, including discounts, rebates, credits, debits, trade-in allowances or other payments you made to your customers, free goods or other incentives you made or provided to your customers and any information related to such adjustments sufficient to tie them to corresponding sales transactions.

  H. Any associated contract number(s) or other means used to identify the contract pursuant to which the transaction was made.

  I. Contract terms associated with transactions (e.g., duration, minimum volume, MFC clauses, etc.).

  J. Any measure of margins earned on sales including without limitation gross

margins.

**Request No. 2:** Documents sufficient to show the manner in which you have maintained records relating to the sale of automatic card shuffler machines to regulated casinos referred to in Request No. 1 above during the period January 1, 2009 through the present, including documents sufficient to describe all electronic data processing systems, programs, and outputs used to record, store, compute, analyze or retrieve electronically stored information relating to your pricing, production, distribution, marketing or sale of the products in the United States, and read or identify data fields produced.

**Request No. 3:** Documents sufficient to explain your pricing of automatic card shuffler machines sold to regulated casinos including but not limited to definitions of all of the characteristics of a card shuffler product determining price, casino buyer characteristics, the functionalities of the machine, and the number of casinos operated by the buyer.

**Request No. 4:** All documents relating to third party research and market data reports concerning automatic card shuffler machines for regulated casinos, or any products that you contend are in the Relevant Market, including without limitation market share data compiled by third parties.

**Request No. 5:** Documents in electronic form sufficient to identify the regulated casinos buying automatic card shuffler machines from you.

**Request No. 6:** Complete electronic data underlying invoices (in a machine-readable format such as*.csv, *.txt, *.xis) for all sales billed by you in the United States of intelligent card shoe products[1] from January 1, 2009 to the present. Data for each transaction should include, but are not limited to, the following characteristics:

---

[1] https://www.sggaming.com/Shuffle-Master/Shufflers-and-Utilities/Intelligent-Shoes.

A.    Date of transaction, including but not limited to the date of order, date of invoice, and date of provision. Any unique numbers that identify the transactions, as well as any associated invoice number or purchase order number.

B.    Bill-to Customer and Ship-to information, including name; any identifying customer number; geographic location (address, state, country); any customer classification information; and distribution channel.

C.    Product information, including unique identifier of product; name; description; any fields containing product characteristics; and product line/family,

D.    Transaction volume or quantity (*i.e.*, units sold or returned).

E.    Transaction amount in dollars, including identification of any discount, rebate, or other adjustment to the final price of the product.

F.    Unit price in dollars.

G.    Any adjustments to sale amounts and prices, including discounts, rebates, credits, debits, trade-in allowances or other payments you made to your customers, free goods or other incentives you made or provided to your customers and any information related to such adjustments sufficient to tie them to corresponding sales transactions.

H.    Any associated contract number(s) or other means used to identify the contract pursuant to which the transaction was made.

I.    Contract terms associated with transactions (*e.g.*, duration, minimum volume, MFC clauses, etc.).

J.    Any measure of margins earned on sales including without limitation gross margins.

**Request No. 7:**  Documents sufficient to show the manner in which you have maintained records relating to intelligent card shoe products referred to in Request No. 6 above during the period January 1, 2009 through the present, including documents sufficient to describe all electronic data processing systems, programs, and outputs used to record, store, compute, analyze or retrieve electronically stored information relating to your pricing, production, distribution, marketing or sale of the products in the United States, and read or identify data fields produced.

**Request No. 8:**  All documents relating to third party research and market data reports concerning the products referred to in Requests Nos. 6, 7 above including without limitation market share data compiled by third parties.

**Request No. 9:**  Complete electronic data underlying invoices (in a machine-readable format such as*.csv, *.txt,* .xis) for all sales billed in the United States of  roulette chip sorters (commonly called "chippers") from January 1, 2009 to the present. Data for each transaction should include, but are not limited to, the following characteristics:

A.   Date of transaction, including but not limited to the date of order, date of invoice, and date of provision. Any unique numbers that identify the transactions, as well as any associated invoice number or purchase order number.

B.   Bill-to Customer and Ship-to information, including name; any identifying customer number; geographic location (address, state, country); any customer classification information; and distribution channel.

C.   Product information, including unique identifier of product; name; description; any fields containing product characteristics; and product line/family.

D.   Transaction volume or quantity (*i.e.*, units sold (or returned)).

E.    Transaction amount in dollars, including identification of any discount, rebate, or other adjustment to the final price of the product.

F.    Unit price in dollars.

G.    Any associated contract number(s) or other means used to identify the contract pursuant to which the transaction was made.

H.    Contract terms associated with transactions (*e.g.*, duration, minimum volume, MFC clauses, etc.).

I.    Any measure of margins earned on sales including without limitation gross margins

**Request No. 10:**  Documents sufficient to show the manner in which you have maintained records relating to roulette chip sorters referenced in Request No. 9 above, including documents sufficient to describe all electronic data processing systems, programs, and outputs used to record, store, compute, analyze or retrieve electronically stored information relating to your pricing, production, distribution, marketing or sale of the products in the United States, and read or identify data fields produced.

**Request No. 11:**  All documents relating to third party research and market data reports concerning the product referred to Request Nos. 9, 10 above including without limitation market share data compiled by third parties.

**Request No. 12:**  Complete electronic data underlying invoices (in a machine-readable format such as*.csv, *.txt, *.xis) for all sales billed in the United States by you for consumer-grade or recreational card shufflers from January 1, 2009 to the present. Data for each transaction should include, but are not limited to, the following characteristics:

A.    Date of transaction, including but not limited to the date of order, date of invoice, and date of provision. Any unique numbers that identify the transactions, as well as any associated invoice number or purchase order

number.

B.    Bill-to Customer and Ship-to information, including name; any identifying customer number; geographic location (address, state, country); any customer classification information; and distribution channel.

C.    Product information, including unique identifier of product; name; description; any fields containing product characteristics; and product line/family.

D.    Transaction volume or quantity (*i.e.*, units sold or returned).

E.    Transaction amount in dollars, including identification of any discount, rebate, or other adjustment to the final price of the product

F.    Unit price in dollars.

G.    Any adjustments to sale amounts and prices, including discounts, rebates, credits, debits, trade-in allowances or other payments you made to your customers, free goods or other incentives you made or provided to your customers and any information related to such adjustments sufficient to tie them to corresponding sales transactions.

H.    Any associated contract number(s) or other means used to identify the contract pursuant to which the transaction was made.

I.    Contract terms associated with transactions (*e.g.*, duration, minimum volume, MFC clauses, etc.).

J.    Any measure of margins earned on sales including without limitation gross margins.

**Request No. 13:** Documents sufficient to show the manner in which you have maintained records relating to the product referenced in Request No. 12 above, including documents sufficient to describe all electronic data processing systems, programs, and outputs

used to record, store, compute, analyze or retrieve electronically stored information relating to your pricing, production, distribution, marketing or sale of the products in the United States, and read or identify data fields produced.

**Request No. 14:** All documents relating to third party research and market data reports concerning the product referred to in Request Nos. 12, 13 above, including without limitation market share data compiled by third parties.

**Request No. 15:** All communications relating to planning services or advice provided by you to buyers of automatic card shuffler machines sold to regulated casinos, or for any products that you contend are in the Relevant Market, relating to casino target audiences or customers that are best reached by this machine.

**Request No. 16:** All purchase or lease contracts, agreements, and letters of commitment entered into by you with purchasers of automatic card shuffler machines for regulated casinos, or any products that you contend are in the Relevant Market, located in the United States in force on, or entered into after, January 1, 2009 and all documents concerning such contracts or agreements or commitments, including documents reflecting the terms and conditions of any agreement between you and purchasers.

**Request No. 17:** All your organizational charts and employee directories for each Defendant and constituent operating companies covering the time period January 1, 2009 to the present.

**Request No. 18:** All documents relating to profitability of sales of automatic card shuffler machines for regulated casinos, or any products that you contend are in the Relevant Market, including without limitation gross revenues, expenses, margins, contribution, overhead, and marginal or incremental cost associated with particular brands of machines products, or particular casino purchasers.

**Request No. 19:** Your monthly, quarterly, and annual financial statements.

**Request No. 20:** All documents relating to your budgets for production or sale of automatic card shuffler machines for regulated casinos, or any products that you contend are in the Relevant Market.

**Request No. 21:** All documents relating to internal business and strategic planning, market research, surveys, competitive analysis, relating to sales of automatic card shuffler machines for regulated casinos, or any products that you contend are in the Relevant Market, including documents prepared for you by third parties.

**Request No. 22:** All documents relating to third party research and market data reports concerning sale of automatic card shuffling machines for regulated casinos, or any products that you contend are in the Relevant Market, including without limitation market share data compiled by third parties.

**Request No. 23:** All presentations to investors, shareholders, rating agencies, investment bankers, board of directors, or board committees concerning the sale of automatic card shuffler machines for regulated casinos, or any products that you contend are in the Relevant Market.

**Request No. 24:** All documents relating to your interactions with customers concerning your sale and marketing of automatic card shuffler machines for regulated casinos, or any products that you contend are in the Relevant Market, including without limitation any complaints received from customers, notes of meetings with customers, sales and marketing presentations and promotional materials given to customers, any internal monitoring of customer interactions, and interactions regarding any of your actual or potential competitors.

**Request No. 25:** All documents regarding your pricing and pricing strategy for the sale of automatic card shuffler machines for regulated casinos, or any products that you contend are

in the Relevant Market, and any analysis of actual or potential competitor pricing of automatic card shuffler machines for regulated casinos, or any products that you contend are in the Relevant Market.

**Request No. 26:** All documents concerning any analysis, research, study, or investigation regarding the effect of any patent infringement action or counterclaim filed by you during the period January 1, 2000 to the present on actual or potential competitors, including without limitation the costs or attorneys' fees imposed on competitors or the effect on their market entry.

**Request No. 27:** All documents that analyze or are related to your cost of supplying automatic card shuffler machines for regulated casinos.

**Request No. 28:** All documents that analyze or are related to your cost of supplying the product referred to in Request No. 6.

**Request No. 29:** All documents that analyze or are related to your cost of supplying the product referred to referred to in Request No. 9.

**Request No. 30:** All documents that analyze or are related to your cost of supplying the product referred to referred to in Request No. 12.

**Request No. 31:** Your document retention policies.

**Request No. 32:** All documents relating to your communications with any actual or potential competitors in the Relevant Market.

**Request No. 33:** Communications with state or federal government regulatory agencies concerning the sale of automatic card shuffler machines in the United States, or any products that you contend are in the Relevant Market, including any white papers that were submitted concerning competition and competitors in the relevant product markets, and all documents relating to those communications.

**Request No. 34:** Communications with any trade associations concerning the sale of automatic card shuffler machines, or any products you contend are in the Relevant Market, and all documents relating to those communications.

**Request No. 35:** All lease contracts, agreements, and letters of commitment entered into by you with leasors of automatic card shuffler machines for regulated casinos (or any products that you contend are in the Relevant Market), intelligent card shoe products, roulette chip sorters, or consumer-grade or recreational card shufflers located in the United States in force on, or entered into after, January 1, 2009 where lease payments are bundled with service payments, and all documents concerning such contracts or agreements or commitments, including documents reflecting the terms and conditions of any agreement between you and purchasers.

**Request No. 36:** Complete electronic data underlying invoices (in a machine-readable format such as *.csv, *.txt, *.xis) for all foreign sales billed outside the United States of automatic card shuffler machines sold to casinos by you. Data for each transaction should include, but are not limited to, the following characteristics:

> A.   Date of transaction, including but not limited to the date of order, date of invoice, and date of provision. Any unique numbers that identify the transactions, as well as any associated invoice number or purchase order number.

> B.   Bill-to Customer and Ship-to information, including name; any identifying customer number; geographic location (address, state, country); any customer classification information; and distribution channel.

> C.   Product information, including unique identifier of product; name; description; any fields containing product characteristics; and product line/family.

D.      Transaction volume or quantity (*i.e.*, units sold or returned).

E.      Transaction amount in dollars, including identification of any discount, rebate, or other adjustment to the final price of the product.

F.      Unit price in dollars.

G.      Any adjustments to sale amounts and prices, including discounts, rebates, credits, debits, trade-in allowances or other payments you made to your customers, free goods or other incentives you made or provided to your customers and any information related to such adjustments sufficient to tie them to corresponding sales transactions.

H.      Any associated contract number(s) or other means used to identify the contract pursuant to which the transaction was made.

I.      Contract terms associated with transactions (e.g., duration, minimum volume, MFC clauses, etc.).

J.      Any measure of margins earned on sales including without limitation gross margins.

**Request No. 37:** Documents sufficient to show the manner in which you have maintained records relating to the foreign sale of automatic card shuffler machines referred to in Request No. 36 above during the period January 1, 2009 through the present, including documents sufficient to describe all electronic data processing systems, programs, and outputs used to record, store, compute, analyze or retrieve electronically stored information relating to your pricing, production, distribution, marketing or sale of these products, and read or identify data fields produced.

**Request No. 38:** Documents sufficient to explain your pricing of foreign automatic card shuffler machines sold referenced in Request No. 36 above including but not limited to

definitions of all of the characteristics of the card shuffler product that determines its price(s), including without limitation casino buyer characteristics, the functionalities of the machine, and the number of casinos operated by the buyer.

**Request No. 39:** All documents relating to third party research and market data reports concerning foreign sales of automatic card shuffler machines referenced in Request No. 36 above, including without limitation market share data compiled by third parties.

**Request No. 40:** All documents relating to or identifying firms selling consumer-grade or recreational card shufflers in the United States or outside the United States.

Dated:  February 9, 2021

Respectfully submitted,

Michael F. Lynch
**Lynch Law Practice, PLLC**
Nevada Bar No. 8555
3613 S. Eastern Ave.
Las Vegas, Nevada 89169
Telephone: (702) 684-6000
Fax: (702) 543-3279
Michael@LynchLawPractice.com

**By:** */s/ R. Stephen Berry*
**Berry Law PLLC**
R. Stephen Berry
*(Admitted Pro Hac Vice)*
1100 Connecticut Avenue, N.W.
Suite 645
Washington, D.C. 20006
Telephone: (202) 296-3020
Fax: (202) 296-3058
sberry@berrylawpllc.com

**Fletcher Law, PLLC**
Zeke Fletcher
*(Admitted Pro Hac Vice)*
333 Albert Avenue, Suite 631
Lansing, MI 48823
Telephone: (517) 755-0776
Fax: (517) 913-6008
zfletcher@fletcherlawpllc.com

**Galanda Broadman PLLC**
Gabriel S. Galanda
Anthony S. Broadman
*(Admitted Pro Hac Vice)*
8603 35th Ave. NE
Suite L1
Seattle, WA 98115
Telephone: (206) 557-7509
Fax: (206) 299-7690
gabe@galandabroadman.com
anthony@galandabroadman.com

**Attorneys for Plaintiffs**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served via email on all parties of record this 9th day of February 2021.


By: */s/R. Stephen Berry*
R. Stephen Berry